**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CRIMINAL ACTION NO. 21-8-DLB-EBA**

**UNITED STATES OF AMERICA**                                                              **PLAINTIFF**


**v.**                                  **MEMORANDUM ORDER**
                          **ADOPTING REPORT AND RECOMMENDATION**


**JIMMY DELEON**                                                                    **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \*

       This matter is before the Court upon the August 23, 2021 Report and
Recommendation (R&R) of United States Magistrate Judge Edward B. Atkins (Doc. # 27),
wherein he recommends that the Court deny Defendant's Motion to Suppress (Doc. #
15).  Defendant having filed Objections (Doc. # 28), to which Plaintiff responded (Doc. #
29), the R&R is ripe for the Court's consideration.  For the reasons that follow, Defendant
Deleon's Objections are **overruled**, the R&R is **adopted** as modified herein, and the
Motion to Suppress is **denied**.

**I.      FACTUAL BACKGROUND**

       Sometime in January of 2021, a counselor at Ashland Middle School in Boyd
County, Kentucky was made aware that a student, Victim 1, wished to harm herself.  (Doc.
# 21 at 1).  Victim 1's mother, C.R., was contacted, and after speaking with her daughters,
Victim 1 and Victim 2, C.R. determined that both had been sexually abused by Deleon.
(*Id.* at 2).  On February 2, 2021, a forensic interview of the victims, ages eleven and
thirteen, was conducted by officers from the Ashland Police Department.  (Docs. # 15-2,

15-3, 15-4). The victims reported that the sexual abuse by Deleon included inappropriate touching, fondling, oral, anal, and vaginal intercourse, and began around the time each was six years old. (Doc. # 21 at 2). During the time period of the alleged abuse, Deleon worked as an over-the-road trucker. (*Id.*). The victims specifically recalled being abused while accompanying Deleon on several work trips throughout the United States. (*Id.*). C.R. confirmed that she allowed her daughters to accompany Deleon on three trips involving interstate travel from 2019 through 2020. (*Id.*). The victims recalled the abuse taking place in truck stops and motels in states across the country, including Kentucky, California, New Mexico, New Jersey, New York, Arkansas, South Dakota, North Dakota, and Florida. (*Id.*); (Docs. # 15-2, 15-3, 15-4). The victims further stated that Deleon would use his cell phone to take photos and record videos of himself engaging in sexual acts with them. (Docs. # 15-2, 15-3, 15-4). After the forensic interview, officers with the Ashland Police Department spoke with C.R., who disclosed that Deleon had used Facebook Messenger to contact one of the victims, stating "I wanna see them huge boobs lol." (Doc. # 15-3). The victims' grandmother, who was also the former girlfriend of Deleon, disclosed that Deleon used several Google and Yahoo email accounts to back up his digital devices, including his cellphone. (Docs. # 15-2 and 15-4).

On February 3, 2021, the Ashland Police Department sought and obtained search warrants for Google ("Gmail"), Facebook, and Oath Holdings ("Yahoo"), to search various email and social media accounts retained by Deleon. (Doc. # 21 at 2). No relevant evidence was obtained from the Facebook or Yahoo warrants, however, the search warrant for Deleon's Gmail account returned multiple videos and photos depicting Deleon engaging in oral, anal, and vaginal sexual intercourse with both victims, separately and

together.  (*Id.* at 3).  On May 13, 2021, a grand jury indicted Deleon with obtaining custody of a minor for use in production of pornography in violation of 18 U.S.C. § 2251A(b)(1), crossing state lines to engage in a sexual act with a person less than twelve years old in violation of 18 U.S.C. § 2241(c), travel with intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b), and transportation of a minor with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a).  (Doc # 6). Defendant filed a Motion to Suppress evidence obtained from the Facebook and email account search warrants.  (Doc. # 15).

## II.   REPORT AND RECOMMENDATION

On August 23, 2021, Magistrate Judge Atkins filed an R&R recommending that Defendant Deleon's Motion to Suppress be denied.  (Doc. # 27).

First, Judge Atkins explained that to establish probable cause, an affidavit must demonstrate "a 'fair probability' that contraband or evidence of a crime will be located on the premises of the proposed search."  (*Id.* at 3) (citing *United States v. Algie*, 721 F.2d 1039, 1041 (6th Cir. 1983)).  While Defendant Deleon argued that the affidavit did not support a finding of probable cause for the Facebook warrant, Judge Atkins found otherwise because the affidavit recounted a statement from the victims' mother—that Deleon had used his Facebook account to request a photo of one of the victim's breasts. (*Id.* at 6).  Furthermore, Judge Atkins also found persuasive the victims' allegation that Deleon used his phone to take photos and videos of himself engaging in sexual acts with them in truck stops and motels across the country.  (*Id.*).  Judge Atkins found that "the combination of the allegation that digital evidence of the crimes exists along with the allegation that [Deleon] used his Facebook account to communicate with one of the

victims" was sufficient to establish probable cause that evidence would be located on Deleon's Facebook account.  (*Id.*).

Next, Judge Atkins addressed Deleon's claim that the Facebook search warrant was overbroad in both time and scope in violation of the Fourth Amendment's particularity requirement.  (*Id.*).  Judge Atkins found that the warrant was sufficiently limited and not a "'general, exploratory rummaging in a person's belongings' forbidden by the Fourth Amendment."  (*Id.* at 7) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). The warrant's request for friends lists, communications, photographs, subscriber, and length of service information were relevant because Deleon allegedly communicated with one of the victims through Facebook Messenger.  (*Id.*).  Likewise, Judge Atkins found Deleon's calendar data, log in dates, times, IP addresses, and location data relevant because the statements made by the victims and their mother alleged that Deleon took the victims on trips across state lines for the purpose of engaging in sexual activity.  (*Id.*)

In reaching this conclusion, Judge Atkins relied on several cases upholding Facebook search warrants when challenged for lack of particularity.  (*Id.* at 8) (citing *United States v. Allen*, No. 16-10141-01-EFM, 2018 WL 1726349, at *6 n.25 (D. Kan. Apr. 10, 2018) (denying a motion to suppress for lack of particularity in a warrant seeking broad categories of Facebook account information because "the warrant was still limited to search for evidence relating to a specific crime, and it did not authorize on its face a search for every record associated with the Facebook accounts."); *United States v. Liburd*, No. 17-CR-296, 2018 WL 2709199, at *2 (E.D.N.Y. June 5, 2018) (Facebook search warrant was not overbroad because it was "limited by reference to an exemplary list of items to be seized."); *United States v. Lowry*, No. 1:15-CR-043, 2015 WL 4399627,

at *3 (S.D. Ohio July 17, 2015) (search warrant for "all communications between any user or recipient and the substance of those communications" was not overbroad where defendant used Facebook Messenger to exchange nude photographs with minors).

Judge Atkins also rejected Deleon's argument that the warrant was overbroad in its authorization of a search over a five-year period because the dates corresponded with the time period that the alleged sexual abuse took place.  (*Id.*).  The alleged abuse began when each victim was age six and the victims are now eleven and thirteen.  (*Id.*).  Further, the victims' statements allege that the sexual contact began around May of 2016, which also falls within the requested time period.  (*Id.*).

Second, Judge Atkins addressed Deleon's arguments challenging the two warrants authorizing the search of his Gmail and Yahoo email accounts for lack of probable cause.  (*Id.* at 9).  Judge Atkins determined that a finding of probable cause was justified due to the cumulative effect of two statements in the affidavit: (1) the victims' statements that the sexual activity was documented on Deleon's cellphone, and (2) a statement from the victims' grandmother, who was also Deleon's former girlfriend, that he used the relevant email accounts to back up his information and cellphone data.  (*Id.*).

Deleon also argued that the email account warrants, like the Facebook warrant, were overbroad in both time and scope, thus violating the Fourth Amendment's particularity requirement.  (*Id.* at 10).  In rejecting this argument, Judge Atkins relied on several cases supporting the search of an email account as reasonable if supported by probable cause.  (*Id.* at 10-11); *see, e.g.*, *United States of America v. Ayache*, No. 3:13-CR-153, 2014 WL 923340, at *5; *United States v. Bach*, 310 F.3d 1063, 1065 (8th Cir. 2002) (upholding as constitutionally reasonable the seizure of "all of the information" from

a defendant's email account where the service provider did not "selectively choose or review the contents of the named account."); *United States v. Deppish*, 994 F. Supp. 2d 1211, 1219 (D. Kan. 2014) (noting that "nothing in § 2703 precludes the Government from requesting the full content of a specified email account."); *United States v. Taylor*, 764 F. Supp. 2d 230, 232, 237 (D. Me. 2011) (upholding search of "all information associated with an identified Microsoft hotmail account."); *United States v. Bowen*, 689 F. Supp. 2d 675, 682 (S.D.N.Y. 2010) (Fourth Amendment does not require authorities to "ascertain which e-mails are relevant before copies are obtained from the internet service provider for subsequent searching."); *United States v. McDarrah*, No. 05 CR. 1182(PAC), 2006 WL 1997638, at *9-10 (S.D.N.Y. July 17, 2006) (denying motion to suppress seizure of "[a]ll stored electronic mail and other stored content information presently contained in" a specified email account), aff'd, 351 F. App'x 558 (2d Cir. 2009). Based on the same reasoning justifying the scope of the Facebook warrant, Judge Atkins found that the scope and time period for the search of the email accounts were not overbroad. (*Id.* at 11).

Lastly, Judge Atkins addressed the good faith exception to the exclusionary rule, which allows for evidence obtained under an invalid warrant to be admissible if officers acted in good faith in reliance on the warrant. (*Id.* at 12). Judge Atkins found that, even if the warrants were deficient, the evidence still should not be suppressed because the officers relied upon the warrants in good faith. (*Id.*). For the good faith exception to apply, the affidavit must contain a minimally sufficient nexus between the crime and the place searched. (*Id.*) (citing *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). Further, the affidavit cannot be so

6

lacking in probable cause that belief in its existence is objectively unreasonable.  (*Id.*) (citing *United States v. Rose*, 714 F.3d 362, 367 (6th Cir.1986)).

In rejecting Deleon's argument that the affidavit is so devoid of probable cause that finding its existence is objectively unreasonable, Judge Atkins pointed out that "[t]he standard by which an affidavit is judged for purposes of good faith is less demanding than the threshold to prove the existence of probable cause in the first place."  (*Id.* at 13) (citing *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004)).  Affidavits that fail to meet this low threshold contain only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability and basis of knowledge."  (*Id.*) (quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)).  Judge Atkins determined that the affidavit was supported by law enforcements' attendance at the victims' forensic interview, where the victims provided clear descriptions of abuse, and therefore was not based on mere suspicions without proper factual support.  (*Id.* at 13).

Deleon also argued that law enforcement "should not have reasonably believed that the warrant was properly issued given the opinion in *United States v. Whitt*."  (*Id.*) *Whitt* instructed that the government must establish a sufficient nexus between illicit activity and the probability that evidence of that activity will be found on a defendant's Facebook account.  (*Id.*) (citing *United States v. Whitt*, No. 1:17CR060, 2018 WL 447586, at *4 (S.D. Ohio Jan. 17, 2018)).  Judge Atkins rejected this argument because the affidavit was not so lacking indicia of probable cause that an objectively reasonable officer would not have relied on it.  (*Id.*).

Judge Atkins ultimately found that the affidavit contained detailed and specific information regarding the alleged illegal activity and established a clear nexus between that activity and the place to be searched.  (*Id.* at 12).  Judge Atkins reasoned that the victims' statements describing their alleged sexual abuse coupled with Deleon's Facebook message established a likelihood that evidence would be found on his Facebook account.  (*Id.*).  Similarly, the combination of the victims' statements regarding Deleon's cellphone use to record the alleged sexual abuse, coupled with his former girlfriend's statement that he used Google and Yahoo email accounts to back up his phone, created a clear nexus between the crime and the accounts.  (*Id.* at 12-13).

For these reasons, Judge Atkins recommended that Deleon's Motion to Suppress be denied. (*Id.* at 14).

## III.   ANALYSIS

### A.   Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district court judge may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition . . . of any motion," including a motion to suppress.  Under Federal Rule of Criminal Procedure 59(b)(1), following a magistrate judge's recommended disposition, a party has fourteen days to file "specific written objections to the proposed findings and recommendations." The district judge is required to "consider de novo any objection to the magistrate judge's recommendation," and "may accept, reject, or modify the recommendation."  Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C).  Failure to object is considered waiver of the party's right to review.  Fed. R. Crim. P. 59(b)(2).

Objections to a magistrate judge's recommended disposition must be "specific written objections to the proposed findings and recommendations." *Id.* This necessitates that "vague, general, or conclusory objections," will not be considered and are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001). Further, an objection that does "nothing more than state a disagreement with a Magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *United States v. Shephard*, No. 09-81, 2016 WL 9115464, at *1 (E.D. Ky. Sept. 18, 2016) (quoting *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004)). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (alteration in original) (quoting *Smith v. Chater*, 121 F.3d 709, 1997 WL 415309, at *2 (6th Cir. July 18, 1997)).

## B.     Defendant Deleon's Objections

Deleon makes three arguments in his objections: (1) that the warrants authorizing a search of his Gmail and Yahoo accounts lacked probable cause because the victims' statements to the police relied upon were uncorroborated and unsworn, (2) that the warrants were overbroad in their time frames and lacked particularity, and (3) the *Leon* good faith exception does not apply to any of the warrants. (Doc. # 28).

The Court initially notes that many of Deleon's objections are not specific and simply restate arguments from his original Motion to Suppress.[1]  Objections of this nature are not considered objections in this context and amount to a failure to object. In Deleon's original Motion to Suppress, he made the same three arguments that he reiterates in his

---

[1]     In his Objections, Deleon "adopt[ed] and incorporate[d] all arguments contained in the original Suppression Motion." (Doc # 28 at 1).

Objections to Judge Atkins's Report and Recommendations. *See* (Doc. # 15 at 10) (arguing that probable cause was lacking because there was no nexus between the affidavit and Deleon's email accounts); (*Id.* at 7, 10, 12) (arguing that the Facebook, Gmail, and Yahoo warrants were overbroad and lacked particularity); (*Id.* at 13) (arguing that the *Leon* good faith exception does not apply because the officers should have known the search warrants were unconstitutional). Deleon's mere disagreement with Judge Atkins's conclusions is an insufficient basis for his objections, as Deleon must point out "specific portions of the report which [counsel] deem[s] problematic." *Robert*, 507 F.3d at 994 (alteration in original) (quoting *Smith*, 1997 WL 415309, at *2). Nonetheless, the Court has conducted an in-depth review of the portions of the R&R to which Deleon objects, and will address each objection on its merits.

### 1.   *Probable Cause Underlying Gmail and Yahoo Warrants*

First, Deleon argues that the email warrants lacked probable cause because the affidavit supporting the warrants contained only the victims' uncorroborated, unsworn statements. (Doc. # 28 at 2). Deleon claims that the Facebook warrant was the only one that contained statements other than the uncorroborated statements from the alleged victims. (*Id.*). Because the officers supposedly relied solely on unsworn statements without any further corroboration, Deleon posits that there was a lack of probable cause regarding the email warrants.[2] (*Id.*).

Probable cause exists when the facts and circumstances described in the affidavit indicate a "'fair probability' that evidence of a crime will be located on the premises of the proposed search." *Algie*, 721 F.2d at 1041. It is well-settled that affidavits relying on

---

[2]   While Deleon groups all the warrant affidavits together, it seems that he only objects to the email warrants for lack of corroboration.

statements made by criminal informants implicate veracity and reliability concerns.  *See Weaver*, 99 F.3d at 1377 (6th Cir.1996).    However, the concerns underlying the motivations of informants do not apply to eyewitness victims. "Eyewitnesses by definition are not passing along idle rumor, for they have either been the victims of the crime or have otherwise seen some portion of it."  *United States v. Bell*, 457 F.2d 1231, 1239 (5th Cir. 1972); William R. LaFave et al., 2 Criminal Procedure,  § 3.3(d) (4th ed.) (noting that the Court has proceeded as if veracity may be assumed when information comes from the victim of criminal activity).  Here, law enforcement relied on information obtained from an interview of the victims.  (Doc. # 15-2 at 2).  Presumably, the magistrate judge granted the warrant because he believed it was based on first-hand knowledge.  *Bell*, 457 F.2d at 1239.

Accordingly, unlike informants whose reliability may be unknown, the victims' statements need not be corroborated to support a finding of probable cause.  As the victims of alleged sexual abuse, there is a presumption that their statements are reliable.  *Id*.; *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (noting that eyewitness statements are generally entitled to a presumption of reliability and veracity); !*United States v. Hodge*, 714 F.3d 380, 384-85 (6th Cir. 2013) ("Statements from a source named in a warrant application . . . are generally sufficient to establish probable cause without further corroboration because the legal consequences of lying to law enforcement officials tend to ensure reliability.").

Furthermore, the email account search warrants were not solely supported by the victims' statements.  In their forensic interview, the victims claimed that Deleon would use his cellphone to record himself engaging in sexual acts with them.  (Doc. # 15-4 at 2).

The victims' grandmother, Deleon's former girlfriend, informed the police that Deleon had several email accounts that she knew he used to back-up his digital devices. (*Id.*). The email account names were given to the police by the grandmother. (*Id.*). Logically, if Deleon regularly backed up his cellphone to his email accounts, it follows that anything on his cellphone was stored on those accounts, including the alleged videos of sexual abuse. Therefore, there was a fair probability that his email accounts contained evidence of a crime. Accordingly, Judge Atkins correctly determined that there was a sufficient nexus between the email accounts and the alleged illegal activity. (Doc # 27 at 9).

As a result, Deleon's objection regarding the lack of probable cause as to the email warrants is **overruled**.

### 2.    *Particularity Requirement*

Second, Deleon restates the argument from his original motion to suppress that all the warrants were overbroad and lacked particularity.[3]  (Docs. # 15 at 7 and 28 at 2-3). Deleon argues that the searches should have been limited in both time-frame and scope to initially find corroborating evidence to subsequently justify a broader search. (Doc. # 28 at 3).

"A search warrant must particularly describe the things to be seized, but the description, whose specificity [varies] with the circumstances of the case, will be 'valid if it is as specific as the circumstances and the nature of the activity under investigation permit.'" *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) (citing *United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988)).

---

[3]    Again, Deleon "submits the arguments set forth in the original motion [to suppress]," which fails to adequately object to Judge Atkins's R&R.

### a. Email Warrants

Generally, a warrant is required to search through the contents of a person's emails. *United States v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010). However, "computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to . . . the system operator." *Leis*, 255 F.3d at 336.

An entire email account can be searched with sufficient probable cause. *Deppish*, 994 F. Supp. 2d at 1219-20 (noting that "nothing in § 2703 precludes the Government from requesting the full content of a specified email account," and the Tenth Circuit has never required warrants to identify a "particularized search strategy."); *Taylor*, 764 F. Supp. 2d at 237 (upholding search of all information associated with an email account and rejecting argument that a warrant fails to satisfy particularity by failing to specify a particular search strategy); *see United States v. Richards*, 659 F.3d 527, 539, 542 (6th Cir. 2011) (noting that computer searches do not require a particular strategy and upholding search of an entire internet server).

The categories of information requested from Deleon's email accounts included:

> For the dates of 5/1/2016 through 2/2/2021,  [a]ll communications content along with any attached files received or sent by these [email] accounts. Subscriber information including name(s), address(es) (including mailing, residential, business and email), length of service including start date.  All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, videos and files including any user deleted content.  Log in date and time along with IP addresses as well as location (GPS) info for the user specified.

(Docs. # 15-2 at 3 and 15-4 at 1).  As an initial matter, Deleon does not have a valid objection to the disclosure of his subscriber information because that information was

voluntarily conveyed to email account managers.  *Leis*, 255 F.3d at 336.  The rest of the requested information implicates a search of substantial portions of both Deleon's Gmail and Yahoo accounts.  However, even these searches are valid.

Deleon's objection that the search of his email account should have been limited in scope fails to sufficiently demonstrate a lack of particularity.  (Doc. # 28 at 2-3).  As noted above, courts do not require that a specific search method is used for email accounts once a warrant is obtained.  *See Deppish*, 994 F. Supp. 2d at 1219-20; *Taylor*, 764 F. Supp. 2d at 237.  While the police knew that Deleon potentially backed up his cellphone to his email accounts, they did not know where in those accounts he stored the backed up information.  (Doc. # 15-4 at 2).  Logistically, the police could not adequately narrow their search nor were they required to limit the scope.

As for temporal limits, Deleon also fails to adequately show a lack of particularity.  (Doc. # 28 at 2-3).  First, the search was limited to the time period in which the alleged sexual abuse occurred, around May of 2016 through February of 2021.  (Doc. # 15-4 at 2-3).  While this may be a long period of time, the affidavit clearly stated the victims' claim that the abuse began in May 2016, with the most recent occurrence in September of 2020.  (Doc. # 15-4 at 2).  Even if obtaining the stored data on Deleon's email accounts after September 2020 was overbroad, a temporal limit was still not required based on the information known to the police.  *See Deppish*, 994 F. Supp. 2d at 1220 (noting a temporal limitation on the search of an email account for alleged child pornography was not reasonable because collectors "hoard their pictures for long periods of time.").  Judge Atkins correctly concluded that that search of Deleon's Gmail and Yahoo accounts was reasonable and not overbroad.  (Doc. # 27 at 11).

### b. Facebook Warrant

The Facebook warrant was identical to the email warrants in the categories of information requested. [4]  (Doc. # 15-3 at 3).  Importantly, Facebook collects "a massive amount of information about its users."  *United States v. Hamilton*, No. 6:18-CR-57-REW-10, 2019 WL 4455997, at *3 (E.D. Ky. Aug. 30, 2019), *report and recommendation adopted*, No. 6:18-CR-57-REW-HAI, 2019 WL 4452828 (E.D. Ky. Sept. 17, 2019).  As such, social media can contain "[t]he sum of an individual's private life."  *Id.* (alteration in original) (quoting *Riley v. California*, 573 U.S. 373, 394 (2014)).  Thus, Facebook search warrants "*can and should* be targeted and particular."  *Hamilton*, 2019 WL 4455997, at *4.  However, when the defendant's Facebook account is used to solicit child pornography, broader searches have been upheld.  *Lowry*, 2015 WL 4399627, at *3 (upholding search of "all communications between any user or recipient and the substance of those communications."); *see also Liburd*, 2018 WL 2709199, at *2 (Facebook search warrant was not overbroad because it was "limited by reference to an exemplary list of items to be seized.").

While the police did request several years of information from Deleon's Facebook account, that time period corresponds with the time frame of the alleged sexual abuse. (Doc. # 15-3 at 3); *see Lowry*, 2015 WL 4399627, at *4 (holding that a one-year period was not overbroad because the alleged crime took place over that time).  Judge Atkins was therefore correct that Deleon's argument that the warrant is overbroad in time is "without merit."  (Doc # 27 at 8).

---

[4]    All the warrants requested the same information from each account over the same time period.  *See supra* p. 13.

As for scope, the police requested all communications content from Deleon's Facebook account, which mirrors the warrant in *Lowry* requesting all communications information.  (Doc. # 15-3 at 3); *see* 2015 WL 4399627, at *2.  Like in *Lowry*, Deleon allegedly used his Facebook account to request nude photographs from a minor, directly implicating his communication data on Facebook.  (Doc. # 15-3 at 2); 2015 WL 4399627, at *2.  Thus, the request for all of Deleon's communication data was justified.

Furthermore, the warrant requested all records stored by an individual using the account, as well as log in dates, IP addresses, and GPS data.  (Doc. # 15-3 at 3).  Unlike *Hamilton*, the information requested here did not encompass every record associated with Deleon's Facebook account.  2019 WL 4455997, at *5.  Instead, the information requested was relevant to finding communications and files related to child pornography or its production, based on the Facebook message in which Deleon requested such material from one of the victims.  (Doc. # 15-3 at 2).  Like *Liburd*, the categories of information requested related to child pornography and that information could have been stored on Deleon's Facebook account.  2018 WL 2709199, at *2.  Deleon's GPS and IP address information were also relevant to the alleged crimes of transporting a minor across state lines for the purpose of engaging in a sexual act with a person under twelve years old.  (Doc. # 27 at 3).  Both his GPS and IP address information could help the police confirm whether the alleged abuse took place across state lines, as alleged by the victims.  (Doc. # 15-3 at 2).  The Facebook warrant was sufficiently particular because the police did not request all of Deleon's Facebook data, the account was used in alleged criminal activity, and the information requested was relevant to the alleged criminal

activity.   As a result, the warrant was not overbroad; Deleon's second objection is **overruled**.

### 3.   *Good Faith Exception*

Lastly, Deleon objects to Judge Atkins's finding that the *Leon* good faith exception would apply to the warrants at issue, even if they were lacking in probable cause.  (Doc. # 28 at 3).  Under the exception, if evidence is obtained in objectively reasonable reliance on the subsequently invalidated search warrant, it should not be suppressed.   *Leon*, 468 U.S. 897, 922 (1984).  For the good faith exception to be applicable, the affidavit must contain a minimally sufficient nexus between the crime and the place searched.  (*Id.*) (citing *Brown*, 828 F.3d at 385 (quoting *Leon*, 468 U.S. at 922).   *Leon* laid out four situations where an officer's reliance on an invalid warrant cannot be considered objectively reasonable: (1) "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for [their] reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned [their] judicial role"; (3) the "warrant based on an affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."  *Leon*, 468 U.S. at 923.   Deleon relies on the third exception— that the officers' reliance on the warrant was objectively unreasonable because the warrants were so lacking in probable cause.[5]  (Doc. # 28 at 3).

---

[5]     Deleon claims that "the officers in this case receive abundant training regarding the requirements of search warrants" and "[a]s such their belief was objectively unreasonable that the warrants were valid."

The warrants at issue were not "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'"  *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 611 (1975) (Powell, J., concurring in part)).  An affidavit "so lacking in indicia of probable cause that no reasonable officer would rely on the warrant has come to be known as a 'bare bones' affidavit."  *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017).  A "bare bones" affidavit is "one that asserts 'only the affiant's belief that probable cause existed.'"  *Id.* (quoting *United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000)).  An affidavit will not be considered "bare bones" if "it contains 'a minimally sufficient nexus between the illegal activity and the place to be searched.'"  *Id.* at 496-97 (quoting *Carpenter*, 360 F.3d at 596).  However, "[a] bare-bones affidavit should not be confused with one that lacks probable cause."  *Id.* at 497.  If the affidavit contains "'*some* connection, regardless of how remote it may have been' . . . 'between the criminal activity at issue and the place to be searched,' then the affidavit is not bare bones and official reliance on it is reasonable."  *Id.* (quoting *United States v. Laughton*, 409 F.3d 744, 749-50 (6th Cir. 2005)).

Here, for the reasons stated, the affidavits clearly established *some* connection between the criminal activity and the places to be searched.  As discussed above, statements from the victims, their mother, and grandmother all connected the alleged sexual abuse with Deleon's Facebook account and email accounts.  (Docs. # 15-2 at 2, 15-3 at 2, 15-4 at 2).  During a forensic interview, the victims alleged that they were recorded on Deleon's cellphone while forced to engage in sexual activity in multiple states during road-trips with Deleon.  (Doc. # 15-2).  The grandmother's statement connected Deleon's email accounts to the alleged criminal activity as she recalled Deleon backing

up his cellphone (potentially containing evidence of criminal activity) to those accounts. (Docs. # 15-2 at 2, 15-4 at 2).  Further, the mother's statement that Deleon used his Facebook account to solicit nude photos from one of the victims established some connection between the contents of his Facebook account and the crimes.  (Doc. # 15-3 at 2).  These statements, from multiple sources, clearly establish that the affidavits were not barebones as they contained much more than the affiant's belief that probable cause existed.

Accordingly, Deleon's third objection is **overruled**.

## IV.    CONCLUSION

Ultimately, Defendant has failed to raise any meritorious legal objections to Magistrate Judge Atkins's Report and Recommendation.  Accordingly, **IT IS ORDERED** as follows:

(1)    The Magistrate Judge's Report and Recommendation (Doc. # 27) is **ADOPTED as modified herein**;

(2)    Defendant Deleon's Objections (Doc. # 28) to the Report and Recommendation are **OVERRULED**;

(3)    Deleon's Motion to Suppress (Doc. # 15) is **DENIED**;

(5)    The time period from July 9, 2021, through today's date, totaling 76 days, is **excluded** from the provisions of the Speedy Trial Act, pursuant to 18 U.S.C. §§ 3161(h)(1)(D) & (H); and

(6)    The matter is scheduled for a **Telephonic Status Conference on October 1, 2021 at 11:00 a.m.**  Because the Court will only be discussing scheduling matters, the Defendant need not participate in the conference.    The parties **must dial in to this**

**conference at least five (5) minutes before the scheduled time** by following these steps:

(1) Call AT&T Teleconferencing at 1-877-336-1839; and

(2) Enter access code 8854898.

This 23rd day of September, 2021.



Signed By:

_**David L. Bunning**_

**United States District Judge**